IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONNA M. M., | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 22-4571 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                    September 25, 2024

Donna M. M. ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Social Security Administration Commissioner's ("the Commissioner") final decision, denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Plaintiff filed a brief supporting her request for review, the Commissioner responded to it, and Plaintiff has filed a reply brief. For the reasons set forth below, Plaintiff's Request for Review will be denied, and Judgment will be entered in the Commissioner's favor and against Plaintiff.

**I.    PROCEDURAL HISTORY**[2]

On March 19, 2020, Plaintiff applied for DIB, alleging disability beginning May 3, 2019. R. at 13. The Social Security Administration ("SSA") initially denied Plaintiff's claim, on July 15, 2020, and upon reconsideration, on December 7, 2020, so Plaintiff requested a hearing. *Id.* On May 24, 2021, Plaintiff appeared telephonically before Administrative Law Judge Eric

---

[1] Martin O'Malley became Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted as Defendant in this suit. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.
[2] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), Plaintiff's Reply Brief ("Pl.'s Reply"), and the administrative record ("R.").

1

Schwarz ("the ALJ") for the administrative hearing. *Id.* at 35. Plaintiff, assisted by her representative, and vocational expert, Donna Nealon ("the VE"), testified at the hearing. *Id.* On June 16, 2021, the ALJ, using the sequential evaluation process ("SEP') for disability,[3] issued an unfavorable decision. *Id.* at 26. The Appeals Council denied Plaintiff's request for review, on September 21, 2022, making the ALJ's findings the Commissioner's final determination. *Id.* at 1. Plaintiff sought judicial review of that decision from this court on November 16, 2022. Both parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

A. <u>Plaintiff's Personal History</u>

Plaintiff, born on October 17, 1965, was 55 years old when the ALJ rendered his decision. R. at 25. She resides with her husband. *Id.* at 24. Plaintiff is a high school graduate and completed one year of college. *Id.* at 25, 218.

B. <u>Plaintiff's Testimony</u>

At the May 24, 2021 hearing, Plaintiff testified regarding limitations that she alleges result

---

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

from physical impairments and prevent full-time employment. She stated that each morning, she has a headache. R. at 45. Regular numbness in her hands causes her to frequently drop objects. *Id.* Her hands fall asleep when she tries to write or pick up and hold an object. *Id.* at 49. As a result, she must stop and take breaks, stretch her fingers, or try to shake her arms. *Id.* Issues with her vision produce quick onsets of disorientation and slow her ability to perform household chores. *Id.* at 42. Plaintiff testified that she can no longer perform her prior gardening hobby because of her hands, balance issues, and inability to bend forward. *Id.* at 45. Plaintiff stated that she can only drive short distances, such as a trip to the grocery store. *Id.* at 43. Highway or night driving is overstimulating and disorienting, so she avoids doing so. *Id.* Plaintiff also detailed to the ALJ her difficulties sleeping; she is restless throughout the night, cannot get comfortable, and her neck pain frequently intensifies. *Id.* at 48.

Plaintiff discussed her ability to use a computer. *Id.* at 46. She stated that after less than ten minutes, she experiences intense eye strain that and must close her eyes. *Id.* at 46-47. Furthermore, she cannot read more than a sentence across the screen. *Id.* at 47. Plaintiff also testified about the issues that arise from being surrounded by numerous people. Noise or lots of activity trigger the following symptoms: (1) disorientation, (2) nausea, (3) vision overstimulation, and (4) intense headaches. *Id.* at 47. Her thinking becomes "thrown off," and she finds it difficult to process information. *Id.*

Plaintiff attends vision therapy weekly and post-concussion syndrome therapy approximately every five weeks. *Id.* at 44-45. She takes medication for her headaches as well as for diabetes. *Id.* at 50.

C.    <u>Vocational Expert's Testimony</u>

At the administrative hearing, the VE characterized Plaintiff's past two jobs as a customer

complaint clerk and a supervisor as skilled[4] positions at the sedentary[5] level of exertion. R. at 52.

The ALJ's first hypothetical scenario asked the VE to consider an individual of Plaintiff's age, education, and past work experience with the following abilities and limitations:

> no driving, screens, such as computer screens, work at heights. No ladders, ropes or scaffolds, no public interaction, no overhead lifting. No more than frequent bending, no climbing or operating heavy machinery. Apply common sense understanding to carry out detailed, but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. Each day, the same job site, task and co-workers. Lifting no more than 50 pounds at a time, but frequent lifting or carrying of objects weighing up to 25 pounds. Sit, stand or walk, each up to seven hours per day.

*Id.* at 53. The VE replied that, given these restrictions, the hypothetical individual could perform the following jobs at the medium[6] level of exertion: (1) laundry laborer, 303,000 positions nationally; (2) hand packer, 634,000 positions nationally; and (3) hand launderer, 209,000 positions nationally. *Id.*

The ALJ's second hypothetical inquired whether any jobs exist in the national economy for an individual [of Plaintiff's age, education, and past work experience] with the following abilities and limitations:

> no driving, computer screens or work at heights. No ladders, ropes or scaffolds. No public interaction, no overhead lifting, no more than frequent bending, no climbing or operating heavy machinery.

---

[4] "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).
[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).
[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

> Apply common sense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations. Each day, the same job site, task and co-workers. . . . Lifting no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. And sit, stand and walk each up to six hours.

*Id.* at 53-54. The VE responded that such an individual could perform the following jobs at a light[7] level of exertion: (1) sorter, 577,000 positions nationally; (2) floss packer, 222,000 positions nationally; and (3) folder, 303,000 positions nationally. *Id.* at 54.

### III. THE ALJ'S FINDINGS

In his decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2024.

2. [Plaintiff] has not engaged in substantial gainful activity since May 3, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: Obesity, post concussive syndrome; post-traumatic headaches, not intractable; cervical sprain and strain with myofasciitis [sic] and muscle spasms, convergence insufficiency disorder; and major depressive disorder. (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can frequently lift and carry up to 25 pounds, but can lift no

---

[7] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

      more than 50 pounds at one time. [Plaintiff] can sit, stand and walk up to seven hours each per day. She should never engage in overhead lifting, driving, work at heights, or work involving computer screens. [Plaintiff] should never climb ladders, ropes or scaffolds or operate heavy machinery; she can frequently bend. Any work must involve the same job site, tasks and co-workers from day to day. She can apply common sense understanding to carry out detailed but uninvolved written or oral instructions; and can deal with problems involving a few concrete variables in or from standardized situations. Any work should involve no public interaction.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on October 17, 1965 and was 53 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date. [Plaintiff] subsequently changed age category to advanced age (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from May 3, 2019, through the date of this decision (20 CFR 404.1520(g)).

R. at 15-16, 18, 24-26.

## IV. DISCUSSION

A. <u>Standard of Review</u>

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if substantial evidence supports them. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion. *Id.* Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91. Nor is the court permitted to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359; *see Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at

431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents a return to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ determined that, although Plaintiff could not perform her past relevant work, R. at 24, she could perform other work in the national economy, that exists in significant numbers. R. at 25. Appropriate jobs included those identified

by the VE: (1) laundry laborer, (2) hand packer, and (3) hand launderer. *Id.* at 53. The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), she was not disabled from May 3, 2019, through the date of his decision, June 16, 2021. *Id.* at 26.

Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by: (1) failing to evaluate the opinions of her treating sources properly; and (2) failing to apply the medical improvement regulation. Pl.'s Br. at 5, 9-10, 12. The Commissioner denies Plaintiff's assertion. Def.'s Resp. at 5, 9-10, 12. This court finds Plaintiff's arguments unmeritorious; moreover, even if the ALJ committed legal error when evaluating the opinion of Plaintiff's optometrist, said error was harmless.

> 1. <u>The ALJ's Analysis of Nurse Callender, Dr. Kochan-Dewey, Dr. Gustitus, Dr. Parmalee, and Dr. Deom's Opinions Does Not Provide a Basis for Remand</u>

Plaintiff argues that the ALJ's RFC conclusion is flawed because he failed to evaluate the medical opinions of the following sources properly: Tamara Callender, CRNP, Amanda Kochan-Dewey, Ph.D., Gaye Gustitus, O.D., Toni Parmelee, D.O., and James Deom, O.D. Pl.'s Br. at 7-11. Specifically, she alleges that the ALJ decided her RFC without relying on a particular medical opinion. *Id.* Therefore, the ALJ improperly substituted his lay opinion. *Id.* The Commissioner counters that Plaintiff's claims are meritless, and the opinions were evaluated correctly in accordance with the relevant regulations. Def.'s Resp. at 5. This court finds that the ALJ did not substitute his lay opinion. Furthermore, his medical opinion analysis, which considered the supportability and consistency of each, was proper under the applicable regulations. Finally, while the ALJ performed a sufficient consistency analysis of Dr. Deom's opinion, his omission of a clear supportability analysis, was harmless error.

Plaintiff's application was filed on March 19, 2020, R. at 13, so the new rules governing

the types of opinions considered and the approach to evaluation of opinions by ALJs apply. 20 C.F.R. § 404.1520c. Under the regulations, effective for claims filed after March 27, 2017, the ALJ need not defer or give any specific evidentiary weight to any medical opinion from treating sources. *Id.* at § 404.1520c(a). Rather, when an ALJ considers medical opinions in the record, new governing regulations indicate that supportability and consistency are the two most important factors.[8] 20 C.F.R. § 404.1520c(b)(2). Indeed, those are the only two factors an ALJ must consider explicitly. *Id.* Supportability refers to the objective medical evidence and accompanying explanation the medical source provides to justify those medical opinions. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to whether, and how consistent, the medical source's opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2). Failure to consider either one of these two factors has been held to constitute reversible legal error. *Cota v. Kijakazi*, Civ. A. No. 21-672, 2022 U.S. Dist. LEXIS 153505, at *19-20 (M.D. Pa. Aug. 25, 2022). In addition, if a medical source provides multiple opinions, an ALJ is not required to provide an analysis of each opinion; instead, the ALJ may address how the relevant factors apply to each source's opinions collectively. 20 C.F.R. § 404.1520c(b)(1). Petitioner's RFC is an issue reserved exclusively for the ALJ. 20 C.F.R. §§ 404.1520b(c)((v), 404.1546(c).

By focusing on the supportability and consistency of Nurse Callender and Dr. Kochan-Dewey's opinions, the ALJ fully complied with the regulations concerning how to evaluate the persuasiveness of medical opinions. *See* 20 C.F.R. § 404.1520c(a), (c)(1)-(2). The ALJ directly

---

[8] These regulations identify five factors for evaluating medical opinions that the ALJ should consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. § 404.1520c(c)(1)-(5).

10

addressed two of Nurse Callender's opinions.[9]  R. at 23-24.  He found the first, which addressed Plaintiff's post-concussion syndrome symptoms, and corresponded to a significantly more restrictive RFC, unpersuasive.  *Id.* at 24.  This is because that assessment occurred only two months after the concussion injury,[10] and was inconsistent with later medical evidence and Petitioner's testimony.  *Id.*  Under the regulations, the lack of consistency with the record is an adequate reason not to accept Nurse Callender's limitation that Plaintiff can only use a computer for "20 minutes before changing gaze to an object at least 20 feet away for 20 seconds."  *Id.*  He additionally found the opinion unpersuasive because it was unsupported and consisted entirely of Plaintiff's subjective complaints.  *Id.*  The ALJ found a second opinion from December 2020, that limited Plaintiff to "no overhead lifting, no repetitive bending activities, climbing, [or] operating heavy machinery," only partially persuasive; it was supported by the physical examination findings and consistent with Plaintiff's RFC.  *Id.* at 24, 394.

The ALJ also properly reviewed the opinion provided by Dr. Kochan-Dewey; an opinion that the court observes was unsupportive of Plaintiff's disability claim.  Dr. Kochan-Dewey opined that Plaintiff had no limitations in any area of mental functioning.  *Id.* at 24.  In November 2020, Dr. Kochan-Dewey performed a psychological consultative examination of Plaintiff.  *Id.* at 450.  The ALJ explained that he found this opinion unpersuasive because, while a one-time consultative examination supported it, it was not consistent with Plaintiff's "persistent complaints of concentration difficulties and anxiety in open or crowded places. . . . [or] with the findings of the

---

[9] Nurse Callender provided several statements regarding Petitioner's ability to work.  R. at 110, 134, 155, 394.  The court notes that Section 404.1520c(b)(1) allows for "[s]ource-level articulation," done in a "single analysis," because it is often infeasible given the amount and array of evidence in the record for ALJs to articulate their consideration of each medical opinion from the same source individually.

[10] Plaintiff states that she "suffered a slip and fall at a restaurant bathroom when she slipped on a puddle of water on May 3, 2019.  [Plaintiff] fell backwards and struck the back of her neck and her head against a bathroom stall.  She collapsed on the ground hitting her neck and back of her head against the tile floor."  Pl.'s Br. at 2 (citing R. at 327).

11

subsequent, much more in-depth neuropsychological evaluation conducted in January and February 2021." *Id.* at 24.  Again, by focusing on supportability and consistency, the ALJ complied with the regulations.  *See* 20 C.F.R. § 404.1520c(a), (c)(1)- (2).

This court is similarly satisfied with the ALJ's analysis of Drs. Gustitus and Parmelee's opinions, and disagrees with Plaintiff's assertion that the ALJ "completely failed to articulate his conclusions." Pl.'s Br. at 8.  Dr. Gustitus found Plaintiff capable of performing light work with occasional postural activities but no climbing of ladders, ropes, scaffolds, or concentrated exposure to all environmental factors except humidity; an opinion that the ALJ notes is supported by Dr. Gustitus' stated review of the record.  R. at 23, 60-72.  Dr. Parmelee supported his own opinion by referencing Dr. Gustitus' opinion, which the ALJ notes.  *Id.* at 23.  The ALJ found both opinions partially persuasive, but not entirely consistent with the evidence of significant improvement from therapy and the findings of full motor strength and sensation.  *Id.*  The ALJ was "not require[d] . . . to use particular language or adhere to a particular format in conducting his analysis," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), rather, he only needed to provide a discernible basis for his decision that allows this court to conduct a meaningful review.  *See Fargnoli*, 247 F.3d at 42; *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000).  The ALJ did so here.

Finally, the court finds no reason for the ALJ's evaluation of Dr. Deom's opinion, which addresses Plaintiff's post-concussion symptoms, to constitute a basis for remand.  The ALJ conducted a proper consistency analysis by explaining that he found that the opinion provided by Plaintiff's optometrist, Dr. Deom, unpersuasive because it was inconsistent with the medical evidence of Plaintiff's subsequent improvement in December 2019 and February 2020.  R. at 24.  While the ALJ did not address supportability, as the regulations require, the court finds the error

harmless. First, the portion of Dr. Deom's opinion, that Plaintiff is "not able to work at this time," is an issue reserved to the Commissioner. *Id.* Second, while the ALJ did not discuss whether the remainder of Dr. Deom's opinion, that Plaintiff "cannot work on a computer for more than 20 minutes at a time due to headaches, dizziness, and nausea; cannot stand more than 20 minutes at a time due to balance and vision issues," was supported, Plaintiff's RFC was ultimately consistent with these restrictions. *Id.* Plaintiff's RFC limited her to jobs that do not require any use of computer screens, climbing of ladders, ropes, or scaffolds, or that require operating heavy machinery. *Id.* at 18. *See Rutherford*, 399 F.3d at 553 (noting that remand is unnecessary to correct errors that would not affect the case's outcome).

2. <u>The ALJ, Appropriately, Did Not Apply the Regulation Governing Medical Improvement</u>

Plaintiff argues that the ALJ failed to properly evaluate her medical improvement in accordance with the medical improvement regulation. Pl.'s Br. at 12. The Commissioner counters that the ALJ did not err because the regulation did not apply. Def.'s Resp. at 12. This court agrees with the Commissioner and finds that the ALJ did not err.

20 C.F.R. § 404.1594, the regulation at issue, applies when a claimant has previously been found to be disabled. Pursuant to this regulation, SSA is required periodically to determine whether "there has been any medical improvement in [the claimant's] impairment(s) and, if so, whether this medical improvement is related to [the claimant's] ability to work." *Id*. at § 404.1594(a). In short, the regulation is limited to instances when the Commissioner re-evaluates whether disability benefits should continue. Plaintiff states that the ALJ did not comply with the medical improvement regulation at 20 C.F.R. § 404.1594. Pl.'s Br. at 12. Plaintiff's allegation of error is meritless because the cited regulation is inapplicable. This is because the ALJ did not find that Plaintiff was disabled at any point during the relevant period. Since the ALJ was not permitted

13

to apply the medical improvement regulation, he could not have erred in failing to do so. Hence, there is no basis for remand.

## V. CONCLUSION

This court finds that the ALJ committed no error that warrants remand. Plaintiff's Request for Review is, therefore, denied. An implementing Order and Order of Judgment follow.